

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JOE
F. #2022R00490

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 20, 2024

By E-mail and ECF

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
275 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Caleb Apolinaris
               Criminal Docket No. 22-398 (MKB)

Dear Chief Judge Brodie:

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, scheduled for November 27, 2024. The defendant pled guilty on March 27, 2024 to one count of distributing and possessing with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). In the parties' plea agreement, the government and the defendant agreed, pursuant to Federal Rule of Procedure 11(c)(1)(B), to recommend that the defendant be sentenced within a United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 135 to 168 months' imprisonment. See Plea Agmt. at ¶ 2; see also Presentence Investigation Report ("PSR") ¶ 88. Because the defendant's sale of fentanyl to a victim ("Victim 1") caused Victim 1's death, the Court should sentence him to 168 months' imprisonment.

      I.    Background and Offense Conduct

      On April 12, 2022, the body of Victim 1 was found inside a home in the Bay Ridge section of Brooklyn, New York. Victim 1 was pronounced dead at approximately 12:00 p.m. The Office of the chief Medical Examiner of the City of New York determined that the cause of Victim 1's death was acute intoxication due to the effects of fentanyl and para-fluorofentanyl. PSR ¶ 1.

      Text messages recovered from Victim 1's cellphone show that between the late evening of April 11, 2022 and early morning of April 12, 2022, Victim 1 exchanged a series of text messages with a phone number ending in x4723 subscribed to by the

defendant's mother.  PSR ¶ 4.  In addition, the x4723 number was listed in Victim 1's cellphone's contacts as "Kappa," an alias used by the defendant.  PSR ¶ 5.

The text messages show that in the late evening of April 11, 2022, Victim 1 was traveling on a northbound train to Penn Station in New York, New York.  Beginning at approximately 10:42 p.m., Victim 1 texted the defendant, "Yo you around I'm in New Jersey," and then, "Boutta be back in ridge."  PSR ¶ 6.  The defendant responded "Yea," to which Victim 1 replied:  "Aii ima hyu roud 1am type shit I just need a bun."  The defendant responded, "Aight its 70."  It appeared to law enforcement that Victim 1's reference to a "bun" was a reference to a bundle of heroin, and the defendant's response of "its 70" referred to the bundle costing $70.  PSR ¶ 7.

At 10:59 p.m., Victim 1 texted, "I'm on the train at Trenton new jersey about 45 min away from penn then I'm getting a uber back to ridge I'll stop by your place."  The defendant responded, "Al[]right bro np."  PSR ¶ 8.  At 11:14 p.m., Victim 1 texted, "Aight be up for me bro please I'm getting a taxi straight to urs should be like a hour at most."  The defendant responded, "I got you 100%."  PSR ¶ 9.

Thereafter, Victim 1 arrived at Penn Station and entered a ridesharing car at approximately 12:17 a.m. on April 12, 2022.  Between 12:37 and 12:38 a.m., Victim 1 sent the defendant a series of text messages stating, in relevant part, "Yo I'm otw . . . I gotta find a atm . . . Only got 10 bucks on me . . . Or I can get you tomorrow . . . I swear I got you . . . Or I'll keep lookin . . . I could throw you 10 now."  The defendant responded, "Bro chill.  1 txt.  No credit."  At 12:39 a.m., Victim 1 texted the defendant, "OK my bad ima find a atm . . . I'm in bk."  The defendant responded, "Bro stop sending multiple txts."  PSR ¶¶ 10-12.

Law enforcement obtained local video footage and bank records showing that at 12:52 a.m., Victim 1 entered a 7-Eleven in the Bay Ridge neighborhood of Brooklyn and withdrew $100 from an ATM machine there.  PSR ¶ 13.

Soon thereafter, at 12:58 a.m., Victim 1 texted the defendant, "I'm here I got 80 you could do 11?," to which the defendant responded, "Yea way."  Law enforcement determined that the "I got 80 you could do 11" referred to an offer to pay the defendant $80 for eleven envelopes of heroin.  Between 12:58 and 12:59 a.m., Victim 1 texted the defendant, "Outside ur door . . . My tax outside."  At 1:00 a.m., the defendant responded, "Come btwn ridge [a]nd colonial."  PSR ¶¶ 14-15.

Video footage shows Victim 1 at 1:04 a.m. approaching a parked vehicle registered to the defendant's mother that was parked on 72nd Street between Ridge Boulevard and Colonial Road in the Bay Ridge neighborhood of Brooklyn.  As Victim 1 approached the vehicle, the defendant stepped out of the driver's seat, Victim 1 approached the defendant after walking around the front of the car, the defendant reached into his right front pants pockets, and the two engaged in a hand-to-hand transaction.  The same footage then shows Victim 1 running eastbound on 72nd Street and returning to his ridesharing car.  Additional

video footage shows the defendant walking back into his apartment building at 1:09 a.m. PSR ¶¶ 16-18.

Video footage from the ridesharing company shows Victim 1, at approximately 1:07 a.m., raising a small envelope to his nose, snorting a substance, and throwing the empty bag out of the window of the ridesharing car. PSR ¶ 19.

Law enforcement recovered from the scene of Victim 1's death a wallet containing his driver's license and other documentation bearing his name, the debit card used to withdraw the $100 in cash, and 10 glassine envelopes containing a powdered substance. The New York City Police Department conducted a controlled substance analysis on the powdered substance in the glassine envelopes, the results of which indicated that nine of the ten envelopes contained fentanyl and the tenth envelope contained a mixture of fentanyl and para-fluorofentanyl. The nine envelopes netted .484 grams of fentanyl and the tenth envelope netted .07 grams of fentanyl analogue. PSR ¶ 21.

On August 4, 2022, the defendant was arrested at his residence on the basis of a one-count complaint charging him with distributing and possessing with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). ECF No. 1; PSR ¶ 22. That day, he was arraigned before the Honorable Marcia M. Henry, United States Magistrate Judge. The defendant was remanded at that time. ECF Minute Entry dated Aug. 4, 2022; ECF No. 5. On September 2, 2022, a grand jury returned an indictment against the defendant, charging him with one count of distributing and possessing with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). See ECF No. 11.

On March 27, 2024, the defendant pleaded guilty, pursuant to a plea agreement, to the sole count of the indictment. See Minute Entry dated Mar. 27, 2024. The government and the defendant agreed in the plea agreement, pursuant to Rule 11(c)(1)(B), to recommend that the defendant be sentenced within a Guidelines range of 135 to 168 months. The defendant stipulated to that Guidelines sentencing range. See Plea Agmt. ¶ 2.

II. The Guidelines Calculation

The Guidelines calculation, as set forth in the PSR, is as follows:

| | |
|---|---|
| Base Offense Level (§ 2D1.1(a)(5) and (c)(16)) | 8 |
| Less: Acceptance of responsibility (§ 3E1.1(a)) | -2 |
| Total: | 6 |

PSR ¶¶ 28-37. Based on a total offense level of 6 and a Criminal History Category of I, the applicable Guidelines range for the defendant is 0 to 6 months of imprisonment. Id. ¶ 74.

3

As set forth in the PSR, however, the defendant's distribution of fentanyl to Victim 1 caused Victim 1's death. PSR ¶ 88. In addition, and as the defendant agrees (see Defendant's Nov. 15, 2024 Ltr. at n.2), and as acknowledged by the Probation Department, see PSR ¶ 88, the parties stipulated to a Guidelines range under U.S.S.G. § 2D1.1(a)(2), yielding an adjusted offense level of 35, with a corresponding Guidelines range of 168 to 210 months, see Plea Agmt. at ¶ 2. Pursuant to Rule 11(c)(1)(B), the parties agreed in the plea agreement to recommend a sentence within a range of imprisonment of 135 to 168 months. See Plea Agmt. at ¶ 2. The government respectfully submits that the Court impose a term of imprisonment at the top of the recommended sentencing range of 135 to 168 months.[1]

III. Discussion

A. Legal Standards

As the Court is aware, a "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007).

Next, a sentencing court must consider the factors enumerated in Title 18, United States Code, Section 3553(a). In considering these factors, a sentencing court "may not presume that the Guidelines range is reasonable," and "must make an individualized assessment based on the facts presented." Gall, 552 U.S. at 50. Section 3553(a) provides that, in imposing sentence, a court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the violation, promote respect for the law, and provide just punishment; the need for the sentence to adequately deter criminal conduct; and the need to protect the public from further crimes of the defendant. See generally 18 U.S.C. § 3553(a).

Section 3553(a) also addresses the need for the sentence imposed to provide the defendant with needed education, vocational training, medical care and/or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(D). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [a sentencing court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

---

[1] To the extent the Probation Department argues that the defendant's distribution of fentanyl causing Victim 1's death "is not expressly established by the count of conviction, and therefore, could not be computed into the determination of the offense level," PSR ¶ 88, the government disagrees. As the Court found, the defendant adequately allocuted to causing Victim 1's death, thus warranting a base offense level of 38 under U.S.S.G. § 2D1.1(a)(2).

4

A sentencing court has "broad discretion both as to the type of information [it] may consider in imposing sentence and the source from which that information derives." United States v. Messina, 806 F.3d 55, 65 (2d Cir. 2015); accord 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

B. The Appropriate Sentence

Consistent with the parties' plea agreement, in which each side agreed to advocate for a sentence between 135 and 168 months, the government respectfully submits that a sentence at the high end of that range would be appropriate. The defendant caused the death of Victim 1 by distributing fentanyl to him. For that reason alone, the defendant should be sentenced to 168 months' imprisonment, the high end of the applicable Guidelines range.

The defendant's offense conduct was gravely serious: it caused the death of Victim 1. The defendant is a grave danger to the community. While the government acknowledges the circumstances of the defendant's upbringing, including substance abuse issues, the fact of Victim 1's death requires the Court to impose a term of imprisonment at the top of the recommended Guidelines range both to punish the defendant and to ensure that he does not hurt or kill anyone else.

IV. Conclusion

Accordingly, in light of the particular circumstances of this case and consistent with the Rule 11(c)(1)(B) plea agreement, the government respectfully submits that the Court impose a term of imprisonment at the top of the agreed upon Guidelines range of 135 to 168 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:       /s/
John O. Enright
Assistant U.S. Attorney
(718) 254-6203

cc: Clerk of the Court (MKB) (by ECF and email)
    Michael K. Schneider, Esq. (by ECF and email)
    U.S. Probation Officer Brian Woo (by email)